THE STATE OF OHIO, APPELLANT, *v.* BRUNNING, APPELLEE.

[Cite as *State v. Brunning,* 134 Ohio St.3d 438, 2012-Ohio-5752.]

*Criminal law—Sex offenders—Adam Walsh Act—Megan's Law—State v. Bodyke does not affect legitimacy of convictions of offenders who were originally classified under Megan's Law for violation of Adam Walsh Act version of R.C. 2950.05 if indictment described conduct that also violates Megan's Law version of R.C. 2950.05—R.C. 2913.42—Defendant can be convicted of tampering with records for filing of false record with purpose to defraud even if defendant had no duty to file record.*

(No. 2011-1066—Submitted April 25, 2012—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,
No. 95376, 2011-Ohio-1936.

_____

PFEIFER, J.

{¶ 1} In this case, we address the legitimacy of convictions of sex offenders, originally classified under Megan's Law, who were indicted for violating the address-notification requirements of the Adam Walsh Act ("AWA") before *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, made the requirements of the AWA inapplicable to such offenders. Specifically in this case, we address whether *Bodyke* requires the vacation of convictions when the conduct at issue—a failure to provide notice of a change of residence address—was a violation of R.C. 2950.05 both as it exists under the AWA and as it existed under Megan's Law. We hold that *Bodyke* does not require the vacation of such convictions.

{¶ 2} Further, we address the issue whether an offender who files an address-verification form with a sheriff under the mistaken belief that the form is

required may be convicted of tampering with records pursuant to R.C. 2913.42 if the form contains false information that was submitted with a purpose to defraud. We hold that regardless of whether a person has a duty to file an address-verification form, filing a form containing false information with the intent to defraud can be a violation of R.C. 2913.42.

Factual and Procedural Background

{¶ 3} Defendant-appellee, Lindell W. Brunning Jr., is a registered sex offender who has been convicted of failing to provide notice of a change of address and tampering with records. In 1983, when he was 20 years old, Brunning was convicted of raping a nine-year-old relative and was sentenced to a prison term of ten to 25 years. In 1997, after the passage of Megan's Law, Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2601, the court classified him as a sexually oriented offender, requiring advance notice of any address change and annual address verification for ten years following his release. Effective January 1, 2008, the Adam Walsh Act ("AWA"), 2007 Am.Sub.S.B. No. 10, repealed Megan's Law. Pursuant to the AWA's retroactive reclassification provisions, R.C. 2950.031 and 2950.032, Brunning was reclassified as a Tier III sex offender by the Ohio Attorney General. Brunning was released from prison on the underlying rape charge on November 7, 2008.

{¶ 4} On August 3, 2009, Brunning filled out and filed a periodic address-verification form on which he stated that he primarily lived at 7914 Lorain Avenue, Apartment 2, in Cleveland. On that same form, he listed a secondary address in Parma Heights. In fact, detectives later learned that Brunning had left the Cleveland house in June and was actually living at the Parma address with another registered sex offender. While living at the Parma address, Brunning engaged in sexual conduct with a male minor. Charged under a separate indictment from the one at issue in this case, he pled guilty to one count of

unlawful sexual conduct with a minor and two counts of sexual battery. Those convictions are not part of this appeal.

**{¶ 5}** Under the January 2010 indictment that is the focus of this case, Brunning was charged with three counts: (1) failure to verify his address every 90 days as required by R.C. 2950.06(B)(3), (2) failure to provide a notice of change of residence address in violation of R.C. 2950.05(E)(1) (the statute was misnumbered in the indictment—it should have read R.C. 2950.05(F)(1)), and (3) tampering with records in violation of R.C. 2913.42(A) by providing false information on his periodic address-verification form.

**{¶ 6}** In an April 20, 2010 hearing, Brunning agreed to plead guilty to all three charges in the indictment at issue as well as certain counts in the other indictment. The state agreed that all three counts in this case would merge for sentencing purposes. The trial court approved the agreement on the record and advised Brunning that because of the merging of the three counts, "the maximum penalty you're looking at on this case is between two to eight years." Brunning pled guilty to all three charges.

**{¶ 7}** Brunning's sentencing hearing was on June 8, 2010, five days after this court's decision in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. In *Bodyke*, this court declared unconstitutional the reclassification provisions of the AWA and held that the classifications and community-notification and registration orders imposed previously by judges pursuant to Megan's Law were reinstated. *Id.* at ¶ 66. Based on *Bodyke*, Brunning argued that his prosecution under the AWA was invalid and requested dismissal of the charges. The trial court denied the motion and ignored its earlier representation that Brunning would face a maximum total sentence of eight years, instead imposing a 21-year sentence for the three registration-related offenses—eight years each for failure to verify an address and failure to provide notice of change of address, and five years for tampering with records, to run consecutively.

{¶ 8} Brunning appealed to the Eighth District Court of Appeals. He argued that his convictions should be vacated because the law upon which they were based, the AWA, is unconstitutional as applied to him. Further, he argued that his guilty plea had been "conditioned on false promises made by the state and the trial court" and that the trial court should have merged the offenses for sentencing.

{¶ 9} The court of appeals reversed all three of Brunning's convictions, reasoning that all of the charges against him were based upon violations of the AWA, which, pursuant to *Bodyke*, did not apply to Brunning:

> The violations for an offender's failure to verify or notify of a change of address pursuant to R.C. 2950.06(F) and R.C. 2950.05(E)(1) [sic], or any tampering with evidence charge for falsifying documents stemming from the reporting violation, were based on the duty to register and verify unlawfully imposed upon those already subject to reporting requirements through prior court order.
>
> * * * Brunning's reclassification under the AWA is contrary to the law. Brunning's conviction arising from reporting violations under the AWA is therefore also contrary to law.

*State v. Brunning*, 8th Dist. No. 95376, 2011-Ohio-1936, ¶ 10-11.

{¶ 10} The state appeals. Among its propositions of law, the state argues that when a sex offender classified under Megan's Law engages in conduct that violates both the AWA and Megan's Law, a conviction should not be vacated on the basis that the offender was indicted under the AWA. Also, the state argues that a person who does not have a legal obligation to file a government record

4

may nevertheless be convicted of tampering with records pursuant to R.C. 2913.42 if the person files a false record with purpose to defraud.

{¶ 11} The cause is before this court upon the acceptance of a discretionary appeal. *State v. Brunning*, 129 Ohio St.3d 1488, 2011-Ohio-5129, 954 N.E.2d 661.

Law and Analysis

I

The Effect of *Bodyke* on Convictions for Failure to Provide

Notice of a Change of Residence Address by Offenders

Originally Classified Under Megan's Law

{¶ 12} We address first whether this court's holding in *Bodyke* requires the vacation of a conviction of a sex offender who was originally classified under Megan's Law but was indicted for violating the AWA where the conduct underlying the conviction constitutes a violation under both Megan's Law and the AWA. Specifically in this case, we address the defendant's violation of the requirement under both Megan's Law and the AWA that he notify the sheriff of a change of residence address.

{¶ 13} In *Bodyke*, this court held that the reclassification provisions in the AWA, R.C. 2950.031 and 2950.032, were unconstitutional and severed them from the AWA. *Id.*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, paragraphs two and three of the syllabus and ¶ 66. *Bodyke* reinstated the classifications and community-notification and registration orders imposed previously by judges upon sex offenders originally classified under Megan's Law. *Id.* at ¶ 66.

{¶ 14} In *State v. Gingell,* 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192, this court addressed the case of a defendant who was originally classified as a sexually oriented offender under Megan's Law and who, as a reclassified Tier III sex offender, was charged with violating the AWA version of R.C. 2950.06. The AWA version of R.C. 2950.06(B)(3) contains a 90–day

address-verification requirement for Tier III offenders; the Megan's Law version contained a less onerous, annual address-verification requirement for sexually oriented offenders. Former R.C. 2950.06(B)(2), 146 Ohio Laws, Part II, 2613. This court held that pursuant to *Bodyke*, the current version of R.C. 2950.06 did not apply to Gingell, because he was required to comply with Megan's Law, not the AWA. Simply put, Gingell had been indicted for violating a statutory requirement that he was not obligated to meet. Instead, "Gingell remained accountable for the yearly reporting requirement under Megan's Law * * *." *Id*. at ¶ 8.

{¶ 15} The state does not contest that Brunning's conviction for failing to verify an address in violation of R.C. 2950.06 should be vacated, pursuant to *Gingell*. Brunning was not bound by the AWA requirement to verify his address every 90 days. But the issue remains regarding the significance of *Bodyke* and *Gingell* to Brunning's conviction for failing to provide notice of a change of residence address pursuant to R.C. 2950.05.

{¶ 16} This case differs from *Gingell* because, unlike the differing address-verification requirements under R.C. 2950.06 of the AWA and Megan's Law, the requirements for giving notice of a change of residence address are the same under both versions of R.C. 2950.05. Under each, sex offenders such as Brunning must notify the sheriff 20 days before a change of address. R.C. 2950.05(A) and former R.C. 2950.05(A), 150 Ohio Laws, Part IV, 5783.

{¶ 17} For the appellate court below, the fact that a sex offender's responsibilities are the same under either statutory scheme was insignificant. The court relied on its earlier decision in *State v. Page*, 8th Dist. No. 94369, 2011-Ohio-83:

> The [*Page*] majority noted that *Bodyke* does not create "a fictitious distinction between an unlawful reclassification 'that imposes a

6

more onerous verification requirement' and a reclassification that does not impose heightened verification requirements. *Bodyke* deemed reclassifications under the AWA unlawful, the only condition being that the offender has 'already been classified by court order under former law.' " *Id.* at ¶ 10, fn. 1.

*Brunning,* 2011-Ohio-1936, 2011 WL 1584479, at ¶ 9.

{¶ 18} We disagree with the appellate court's characterization of "a fictitious distinction" between a requirement that is onerous and one that is less so. The overriding question in this case is whether the indictment describes a violation of Megan's Law, the requirements of which the defendant remained obligated to meet. If the indictment describes the violation of a requirement more onerous than is set forth in Megan's Law, then the indictment is defective as to an offender who is bound by Megan's Law alone.

{¶ 19} Brunning argues that neither Megan's Law nor the AWA applied to him during the period in question, that there is a gap in the law for offenders who were originally classified under Megan's Law. That alleged gap runs from January 1, 2008—when Megan's Law was repealed and replaced by the AWA—until June 3, 2010—when *Bodyke* reinstated the classifications and community-notification and registration orders imposed pursuant to Megan's Law. Brunning argues that with Megan's Law repealed, the only law purporting to govern sex offenders' registration and notification duties was the AWA, which was unconstitutionally applied to offenders originally classified under Megan's Law. Thus, according to *Brunning*, the only law extant after January 1, 2008, regarding registration and notification did not apply to him; he argues that *Bodyke*'s reinstatement of the requirements of Megan's Law to offenders originally classified under Megan's Law applied only prospectively.

**{¶ 20}** We reject Brunning's theory that there is a gap in the law for certain sex offenders. *Bodyke* reinstated the classifications and community-notification and registration orders imposed previously by judges. Once reinstated, those orders operated prospectively from the time they were first instituted. They related back to the time they were first imposed and continued in effect as if they had never been changed. In *Gingell*, this court did not hold that Megan's Law requirements applied to the defendant only prospectively from *Bodyke*; instead, this court stated, "Gingell *remained accountable* for the yearly reporting requirement under Megan's Law * * *." (Emphasis added.) *Id.*, 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192, ¶ 8.

**{¶ 21}** The General Assembly certainly did not intend for sex offenders to be relieved of obligations to notify authorities of a change of address when it repealed Megan's Law and enacted the AWA. The clarity of the General Assembly's intention is meaningful:

> When a court strikes down a statute as unconstitutional, and the offending statute replaced an existing law that had been repealed in the same bill that enacted the offending statute, the repeal is also invalid unless it clearly appears that the General Assembly meant the repeal to have effect even if the offending statute had never been passed.

*State v. Sullivan*, 90 Ohio St.3d 502, 739 N.E.2d 788 (2001), paragraph two of the syllabus. Pursuant to *Sullivan*, if a bill repeals and replaces a law and the enactment is deemed unconstitutional, then the repeal is invalid unless the General Assembly intended to repeal the law regardless of its replacement.

**{¶ 22}** The AWA repealed and replaced Megan's Law. The *Bodyke* court struck R.C. 2950.031 and 2950.032, provisions of the AWA that required the

Ohio Attorney General to reclassify sex offenders who had already been classified by a judge under Megan's Law. The question we must ask is whether the General Assembly would have wanted the repeal of Megan's Law to take effect even if the AWA had never been passed. The answer is self-evident. The General Assembly replaced Megan's Law with a statutory scheme in the AWA that was in many ways more onerous than its predecessor, signaling its intent to increase public protection, not decrease it. It is unimaginable that the General Assembly would have intended offenders originally classified under Megan's Law to be free from any reporting requirements if the AWA were to be struck down. Thus, the repeal of Megan's Law is invalid as it affects offenders originally classified under Megan's Law. Offenders like Brunning had a continuing duty to comply with Megan's Law requirements.

Brunning's Indictment

{¶ 23} Did Brunning's indictment describe a violation of Megan's Law requirements? "[T]he Ohio Constitution guarantees an accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury." *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, 926 N.E.2d 611, ¶ 14, citing *Harris v. State*, 125 Ohio St. 257, 264, 181 N.E. 104 (1932). We hold that the essential facts constituting Brunning's alleged offense of failure to provide notice of a change of residence address were contained in the indictment.

{¶ 24} The second count of the indictment alleged that Brunning violated the requirement to provide notice to the sheriff of a change of address; the indictment set forth that Brunning's duty to register a change of address was based upon his 1983 first-degree-felony rape conviction. The heading of the second count reads "Failure to Provide Notice Of Change Of Address"; the statutory section listed in the heading was R.C. 2950.05(E)(1). As the court of appeals noted, the relevant AWA statutory section is actually R.C. 2950.05(F)(1);

the Megan's Law version of the relevant statute was R.C. 2950.05(E)(1) as it existed immediately before it was repealed. 150 Ohio Laws, Part IV, 5783. Though styled differently, the AWA and the pre-AWA versions are identical as to persons required to submit a change of residence address: "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section * * * shall fail to notify the appropriate sheriff in accordance with that division." Both mention R.C. 2950.05(A), and both the current and former versions of R.C. 2950.05(A) require offenders to provide a 20-day notification of a change in their residence address.

{¶ 25} The indictment lists the date of the offense as "[O]n or about August 3, 2009." The body of the indictment reads:

[Brunning] did fail to notify the Cuyahoga County Sheriff of a change of address and the basis of the registration, notice of intent to reside, change of address notification, or address verification requirement that was violated under the prohibition was a felony of the first degree if committed by an adult or a comparable category of offense committed in another jurisdiction, to wit: on or about December 23, 1983, in the Common Pleas Court of Ohio, Cuyahoga County, Ohio, Case No. CR 187506, having been convicted of the crime of Rape, in violation of Revised Code Section 2907.02 of the State of Ohio.

{¶ 26} Although the state indicted Brunning for conduct that violated the AWA version of R.C. 2950.05, the conduct described in the indictment also constituted a violation under the Megan's Law version of R.C. 2950.05, which Brunning was bound to follow. The indictment set forth the elements of the charge under either version of the statute.

**{¶ 27}** As the defendant in *Gingell* remained accountable for the yearly reporting requirement under Megan's Law, so Brunning remained accountable for the address-change-notification requirement in Megan's Law. The indictment properly set forth what Brunning was accused of—failing to notify the sheriff of the move. Thus, we disagree with the judgment of the court of appeals that "Brunning's conviction was predicated upon the reporting requirements held to be unconstitutional as applied to him." Instead, Brunning's conviction was predicated on a requirement that has never been declared unconstitutional and that Brunning has never been released from obeying: the requirement of notifying the sheriff of a change of address under the Megan's Law version of R.C. 2950.05. Contrary to the holding of the court of appeals, the indictment did charge an offense against Brunning. Further, it provided Brunning with notice of the essential facts constituting his offense. *See State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 8 (indictment is sufficient if it gives the accused notice of all the elements of the charged offense).

II

Falsifying Records

**{¶ 28}** The state also appeals the judgment of the appellate court reversing the defendant's conviction for tampering with records pursuant to R.C. 2913.42. This charge is based on false information in a document Brunning filed in the mistaken belief that the AWA version of R.C. 2950.06 applied to him. While the state does not quarrel with the appellate court's reversal of Brunning's conviction for violating R.C. 2950.06, the state does contest the reversal of the tampering conviction, arguing that even though Brunning was not by law required to file a verification of address, he nonetheless filed a document that was false. The court of appeals held that the indictment failed to state a crime by Brunning because the charge of tampering with evidence for falsifying documents stemming from the reporting violation "was based on the duty to register and verify unlawfully

imposed upon those already subject to reporting requirements through prior court order." *Brunning*, 2011-Ohio-1936, at ¶ 10. The court vacated the conviction because "Brunning's conviction was predicated upon the reporting requirements held to be unconstitutional as applied to him." *Id.* at ¶ 13.

{¶ 29} The fact is, however, that Brunning—though under no legal obligation to do so—filed an address-verification form with the sheriff that contained false information. R.C. 2913.42 states:

> (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
>
> (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;
>
> (2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section.

{¶ 30} The issue for Brunning is whether he, with a purpose to commit fraud, falsified any writing or record. He pled guilty to having falsified a record that would have led the sheriff to believe that Brunning's primary address was in Cleveland. Whether he was required to verify his address or not, he voluntarily misled the person to whom he submitted the form. There is no requirement in R.C. 2913.42 that the perpetrator has a duty to produce the writing in question. Any number of voluntary registrations for government licenses, permits, or benefits involve filling out forms. R.C. 2913.42 leaves no reason to believe that it would not encompass falsifications of voluntarily produced writings or records.

## Conclusion

{¶ 31} We hold today that offenders originally classified under Megan's Law have a continuing duty to abide by the requirements of Megan's Law. Thus,

this court's holding in *Bodyke* does not require vacation of a conviction for violating the AWA when the offender, originally classified under Megan's Law, was indicted for a violation of the AWA that also constitutes a violation under Megan's Law. We note that the applicable penalty provision for such convictions is that contained in former R.C. 2950.99, as held in another decision of this court announced today, *State v. Howard*, 134 Ohio St.3d 467, 2012-Ohio-5738, 983 N.E.2d 341.

{¶ 32} Further, we hold that a sex offender originally classified under Megan's Law who is not required to file an address-verification form with a sheriff may be convicted of tampering with records pursuant to R.C. 2913.42 if he files a form containing false information with a purpose to defraud. Regardless of whether the filer had a duty to file a form, filing a form containing false information with the purpose to defraud is a violation of R.C. 2913.42.

{¶ 33} Accordingly, we reverse in part the judgment of the court of appeals. We affirm the court in regard to its vacation of Brunning's conviction for a violation of R.C. 2950.06, but reverse the vacation of the convictions for violations of former R.C. 2950.05 and R.C. 2913.42. We remand the cause to the court of appeals for a consideration of issues rendered moot by its decision vacating Brunning's convictions.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and Nathaniel J. McDonald, Assistant Public Defender, for appellee.

_____