[Cite as *State v. Bowling*, 2013-Ohio-1623.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100323 |
| | | TRIAL NO. B-0903357 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DAVID BOWLING, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  April 24, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Presiding Judge**.

{¶1}   On May 22, 2009, defendant-appellant David Bowling, who was required to register as a sex offender on the basis of a July 14, 1997, conviction for rape, was indicted for failing to provide notice of an address change, a first-degree felony. Bowling had been classified on July 29, 1997, as a sexual predator under former R.C. Chapter 2950 ("Megan's Law"). *See* Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, enacted in 1996, amended in 2003 by Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6556. He had been reclassified as a Tier III sex offender by the Ohio Attorney General under Am.Sub.S.B. No. 10 ("Senate Bill 10"), which the General Assembly enacted in 2007 to implement the federal Adam Walsh Child Protection and Safety Act of 2006.

{¶2}   Bowling initially pleaded not guilty by reason of insanity. After a court clinic evaluation, Bowling pleaded guilty to failing to provide notice of an address change as a second-degree felony. He was sentenced to seven years' incarceration.

{¶3}   We affirmed the trial court's judgment in *State v. Bowling*, 1st Dist. No. C-100323, 2011-Ohio-4946. The Ohio Supreme Court affirmed Bowling's conviction, but reversed his sentence, and remanded the cause for "application of the court's decisions in *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, 983 N.E.2d 316, and *State v. Howard*, 134 Ohio St.3d 467, 2012-Ohio-5738, 983 N.E.2d 341." Accordingly, we vacate, and substitute this opinion for, our 2011 opinion.

{¶4}   Bowling's first assignment of error alleges that the trial court erred in accepting his guilty plea. Bowling argues that his plea was not made knowingly, intelligently, and voluntarily because he was under the influence of prescription medication.

{¶5} The record shows that in accepting Bowling's plea, the trial court conducted a thorough colloquy with Bowling, strictly complying with the provisions of Crim.R. 11(C) and correctly informing him about the constitutional rights enumerated in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court substantially complied with the rule in all other respects. *See State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981); *State v. McCann*, 120 Ohio App.3d 505, 698 N.E.2d 470 (1st Dist.1997).

{¶6} Regarding Bowling's medication, the trial court addressed him as follows:

{¶7} "THE COURT: Today, are you under the influence of drugs, medication or alcohol?

{¶8} "THE DEFENDANT: Medication.

{¶9} "THE COURT: What medication?

{¶10} "THE DEFENDANT: Morphine, Oxycodone, Neurontin, for pain.

{¶11} "THE COURT: Okay. And do those affect your ability to understand and make intelligent choices?

{¶12} "THE DEFENDANT: I don't believe so, no.

{¶13} "THE COURT: Okay. All right. The Court has observed the defendant for a little while here now at this point and it is apparent to me that the defendant understands what's going on and appears to be competent to make decisions that he's making today."

{¶14} The court specifically asked Bowling about his medication and its effects on him. Bowling indicated that his medication did not affect his ability to understand the plea proceedings. The trial court stated on the record that Bowling did not appear to be affected by the medication. The record shows that the trial court

conducted a meaningful dialogue with Bowling to ensure that his plea was made knowingly, voluntarily, and intelligently. There is no indication in the record that Bowling was confused, or that he did not understand the nature of the proceedings or the consequences of his plea. The first assignment of error is overruled.

{¶15} Bowling's second assignment of error alleges that he was denied the effective assistance of counsel because his trial counsel advised him that he would receive "probation" in exchange for pleading guilty.

{¶16} Counsel's performance will not be deemed ineffective unless and until it is proved to have fallen below an objective standard of reasonable representation and to have prejudiced the defendant. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the proceedings would have been different. *See id.*; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶17} The record does not demonstrate Bowling's alleged error. When the trial court asked Bowling if he had been promised "anything * * * to plead guilty," he answered, "No." Bowling also stated that he was satisfied with counsel's representation. Further, during sentencing, Bowling's counsel stated, "If the court were to consider community control, he'd be supervised by the probation department as well as his parole officer in addition to his duties to continue to report," indicating that community control was a possibility, not a condition of the guilty plea.

{¶18} The record does not support Bowling's claim of ineffective assistance of counsel. The second assignment of error is overruled.

{¶19}   Bowling's third assignment of error, raised in his supplemental brief, alleges that the trial court erred in accepting his guilty plea to the failure-to-notify offense because the offense was based upon an unconstitutional reclassification under Senate Bill 10.

{¶20}   In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, the Ohio Supreme Court held that "R.C. 2950.031 and 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violate the separation-of-powers doctrine by requiring the reopening of final judgments." *See id.*, paragraph three of the syllabus. Further, the court held that the statutes violate the separation-of-powers doctrine because they "impermissibly instruct the executive branch to review past decisions of the judicial branch." *See id.*, paragraph two of the syllabus. The court severed the statutory provisions, holding that "R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated." *See id.* at ¶ 66.

{¶21}   The Supreme Court cited *Bodyke* in *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, 946 N.E.2d 192, holding that an offender who had been judicially classified as a sexually oriented offender and ordered to register annually for ten years under Megan's Law could not be prosecuted for failing to comply with a more restrictive registration requirement imposed after reclassification as a Tier III sex offender under Senate Bill 10. In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, the court held that Senate Bill 10's classification, registration, and community-notification provisions could not constitutionally be retroactively applied to sex offenders who had committed their sex offenses before its enactment.

**{¶22}** Bowling was classified under Megan's Law as a sexual predator on July 29, 1997. He was subsequently reclassified under Senate Bill 10 as a Tier III sex offender. Pursuant to *Bodyke*, Bowling's Megan's Law classification, community-notification, and registration orders were reinstated. Bowling's classification under Megan's Law as a sexual predator required him to register for life and to verify his information every 90 days. He also had an ongoing duty to provide written notice at least 20 days prior to any change of address. *See Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, 983 N.E.2d 316, at ¶24 ("both the current and former versions of R.C. 2950.05(A) required offenders to provide a 20-day notification for a change in their residence address").

**{¶23}** The *Brunning* court held that *Bodyke* did not require that a conviction for failing to provide notice of an address change be vacated where the failure to notify was a violation of R.C. 2950.05 both as it existed under Megan's Law and as it exists under Senate Bill 10. *Id.* Bowling was indicted for failing to provide written notice at least 20 days prior to a change of address. The indictment stated that the basis of that duty was a July 14, 1997, conviction for rape. His failure-to-notify offense was based upon that duty, which was the same under both Senate Bill 10 and Megan's Law, and was not affected by any reclassification. Therefore, his failure-to-notify offense was not based upon an unconstitutional reclassification.

**{¶24}** Bowling also alleges that the trial court erred in applying current R.C. 2950.99, which prescribes the penalty for Bowling's failure-to-notify offense. Bowling argues that the court should have applied the version of R.C. 2950.99 that was in effect at the time of his original classification as a sexual predator.

**{¶25}** In *Howard*, 134 Ohio St.3d 467, 2012-Ohio-5738, 983 N.E.2d 341, the Supreme Court held that former R.C. 2950.99, "specifically, the version of R.C. 2950.99

in place immediately prior to the repeal of Megan's Law by the Adam Walsh Act," governs the penalty for sex offenders originally classified under Megan's Law who violate former R.C. 2950.05 by failing to give proper notice of an address change. Bowling must be found guilty and sentenced under the version of R.C. 2950.99 in place immediately prior to the effective date of Senate Bill 10. Under that version of R.C. 2050.99, Bowling's failure-to-notify offense is a felony of the third degree. *See id.*; *see also State v. Washington*, 1st Dist. No. C-120583, 2013-Ohio-797.

{¶26} Bowling's third assignment of error is sustained. The judgment of the trial court finding Bowling guilty of and sentencing him for a second-degree felony is reversed, and this cause is remanded to the trial court with instructions to vacate Bowling's second-degree felony conviction, to enter a finding of guilt for a third-degree felony, and to sentence Bowling for a third-degree felony offense.

Judgment reversed and cause remanded.

**HILDEBRANDT** and **CUNNINGHAM, JJ.**, concur.

Please note:

The court has recorded its own entry this date.