[Cite as *State v. Dickerson*, 2023-Ohio-4787.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :                    No. 112597

v.                                      :

RORELL DICKERSON,                       :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; VACATED
**RELEASED AND JOURNALIZED:** December 28, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672186-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq, Assistant Prosecuting Attorney, *for appellee.*

Wegman Hessler and Valore and Matthew O. Williams, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Rorell Dickerson appeals his convictions for tampering with records and forgery following a jury trial. He contends that his

convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. He also contends that the trial court erred in taking judicial notice of the contents of "docket sheets from the arraignment room" to establish that Dickerson had been previously charged with similar offenses and by allowing the state to introduce evidence of prior criminal prosecutions under Evid.R. 404(B). For the reasons that follow, we reverse the trial court and vacate Dickerson's convictions.

**Factual Background and Procedural History**

{¶ 2} This case involves Dickerson's registration of motor vehicles with the Ohio Bureau of Motor Vehicles ("BMV"), listing his employer's address, i.e., the address of the police station at which he worked, rather than his residence address on the vehicle registrations.

{¶ 3} Pursuant to R.C. 4501.271(A)(1), an eligible peace officer, correctional employee or youth services employee may file a written request with the BMV (1) to prohibit disclosure of his or her residence address contained in the BMV's motor vehicle records and/or (2) to display a business address (rather than a residence address) on his or her driver license and/or vehicle registrations.

{¶ 4} To do so, the individual must complete BMV Form 2610, i.e., an "authorized official record confidentiality request" ("BMV Form 2610" or "Form 2610"), and submit the completed form at a deputy registrar office along with his or her peace office or employee photographic identification card to verify his or her status as a peace officer, correctional employee or youth services employee. R.C. 4501.271(A)(2), (G); Ohio Adm.Code 4501:1-12-03(E), (L).

{¶ 5} Form 2610 requires disclosure of the applicant's name, residence address, business address (if the applicant seeks to display his or her business address rather than his or her residence on his or her driver's license or vehicle registrations), date of birth, driver's license number or Ohio ID number and social security number. BMV Form 2610. The applicant must also certify that he or she is an eligible peace officer, correctional employee or youth services employee. *Id.*

{¶ 6} The deputy registrar forwards the completed Form 2610 to the BMV. Ohio Adm.Code 4501:1-12-03(F). The form is effective after it is received and processed by the BMV in Columbus. R.C. 4501.271(E); Ohio Adm.Code 4501:1-12-03(G); BMV Form 2610. Although the driver's license and/or certificates of registration issued to an eligible officer or employee who files a Form 2610 display his or her business address, the officer or employee must "still provide a residence address in any application for a driver's license or license renewal and in any application for a motor vehicle registration or registration renewal" and the BMV retains the individual's residence address in its database. R.C. 4501.271(D), (F); Ohio Adm.Code 4501:1-12-03(L).

{¶ 7} On February 3, 2021, Dickerson filed a Form 2610 at a local BMV office. At that time, Dickerson was a patrol officer employed by the Cleveland Police Department and worked at the Fifth District police department headquarters (the "Fifth District") located at 881 East 152nd Street, Cleveland, Ohio 44110.

{¶ 8} The Form 2610 Dickerson submitted included the following instructions at the top of the form:

Pursuant to 4501.271(A)(1) of the Ohio Revised Code (R.C.), a peace officer, correctional employee, or youth services employee may file a written request with the Bureau of Motor Vehicles to block officer's or employee's residence address and/or to display a business address on the eligible individual's driver license and/or certificates of registration. This document must be updated every time you renew your Ohio Driver License or ID.

1. You must fill out this form and appear at a Deputy Registrar Agency.

2. You must verify your status as a peace officer, correctional employee, or youth services employee by providing your employment picture identification card. Verification of your status must be confirmed by marking the appropriate box on the backside of this form. * * *

3. This form will be effective after receipt and processing at the Bureau of Motor Vehicles in Columbus. Please do not leave any fields blank. If the form is not filled out completely, the information will not be updated. Any changes contained in this document will override any previous requests to add or change address information.

4. Eligibility to have the business address displayed on a driver license, identification card, commercial driver license, or certificates of registration expires on the expiration date of the applicant's driver license, identification card, or commercial driver license.

(Emphasis deleted.) The form further indicated that if the box marked "display business address * * * on my vehicle registrations" was checked, the applicant's business address would be "[a]utomatically display[ed] * * * on all vehicles containing your SSN." (Emphasis deleted.)

{¶ 9} Dickerson checked all three boxes on the front of the Form 2610, indicating that he wished to prohibit disclosure of his residence address and to display his business address on both his driver's license and vehicle registrations.

Dickerson then completed the sections of the form requesting his name, residence address, driver's license number/Ohio ID number and social security number. In the section of the form designated for his "residence address," Dickerson did not, however, list his actual residence address; rather, he listed his employer's address, i.e., the address of the Fifth District Cleveland Police Headquarters, "881 E. 152nd St[.]," Cleveland, Ohio 44110. Dickerson left the section designated for his "business address" blank. Dickerson also left the section designated for his date of birth blank. Although he submitted the form on February 3, 2021, Dickerson listed the date as February 3, 1995, next to his signature.

{¶ 10} Below Dickerson's signature, the form states, "Verification & Signature for Completion Required." Beneath that statement is a small box labeled, "Photo Id Verified By," with spaces designated for entering an "Agency #" and signature. 1856 was entered as the "Agency #" on Dickerson's Form 2610, and the photo verification was signed by an unknown individual.[1]

{¶ 11} Dickerson thereafter signed and submitted three BMV Form 5701 certificates of registration ("certificates of registration" or "vehicle registrations"), registering vehicles he owned, on which the address of the police station at which he worked, 881 East 152nd Street, Cleveland, Ohio 44120, was listed as "owner

---

[1] Although BMV Form 2610 is a two-page form, only the first page of the form was marked as an exhibit below. The second page of the form, on which the applicant must certify that he or she is an eligible peace officer, correctional employee or youth services employee, was not included in the exhibit. In this case, no claim has been made that Dickerson did not properly certify his status as a peace officer or that he was not, in fact, eligible to seek the nondisclosure of his residence address and substitution of his business address on his driver's license and vehicle registrations under R.C. 4501.271(A)(1).

addr[ess]" — a certificate of registration for a 1999 Chevy Tahoe on August 16, 2021, a certificate of registration for a 2017 Honda motorcycle on March 17, 2022 and a renewal certificate of registration for the 1999 Chevy Tahoe on April 5, 2022. As to each of these certificates of registration, virtually all of the information listed on the forms — including the owner name, social security number, owner address and phone number, vehicle plate number, title number, serial number, year, make, class and odometer reading and the registration, expiration and issue dates, was prepopulated by the BMV. Dickerson signed each form, "agree[ing] and attest[ing]" that "all the above is true and correct." Each form included the following "warning": "Applicant giving false information is subject to prosecution-O.R.C. Sec. 2921.13."

{¶ 12} On December 27, 2021, a Cuyahoga County Grand Jury indicted Dickerson, in Cuyahoga C.P. No. CR-21-664404-A ("664404"), on one count of tampering with records in violation of R.C. 2913.42(A)(2), a third-degree felony, and one count of forgery in violation of R.C. 2913.31(A)(3), a fifth-degree felony. The charges related to Dickerson's alleged filing of a fraudulent certificate of registration with the BMV in August 2021. Dickerson was arraigned in that case on February 11, 2022.

{¶ 13} On July 8, 2022, a Cuyahoga County Grand Jury then indicted Dickerson, in Cuyahoga C.P. No. CR-22-672186-A ("672186"), which included offenses that occurred after his arraignment in 664404. He was indicted on six counts: one count of tampering with records in violation of R.C. 2913.42(A)(2), a third-degree felony, (Count 1); two counts of tampering with records in violation of

R.C. 2913.42(A)(1), a third-degree felony, (Counts 3 and 5); and three counts of forgery in violation of R.C. 2913.31(A)(3), a fifth-degree felony (Counts 2, 4 and 6). The charges related to Dickerson's alleged filing of fraudulent certificates of registration with the BMV on August 16, 2021 (Counts 1 and 2), March 17, 2022 (Counts 3 and 4) and April 5, 2022 (Counts 5 and 6). Dickerson pled not guilty to the charges. On August 31, 2022, 664404 was dismissed without prejudice at the state's request.

{¶ 14} On February 15, 2023, this case, 672186, proceeded to a jury trial. On the morning of the trial, an issue arose regarding the state's intent to introduce other-acts evidence under Evid.R. 404(B)(2). Although there is no indication on the trial court docket that such a notice was ever filed in this case, the trial transcript reflects that, on the night before trial, both the trial court and Dickerson received a copy of a notice of the state's intent to offer Evid.R. 404(B)(2) evidence. Dickerson objected to the state's proposed offering of Evid.R. 404(B)(2) evidence, and the trial court heard argument on the issue.

{¶ 15} Dickerson argued that the state should be precluded from offering any Evid.R. 404(B)(2) evidence because it did not provide reasonable notice as required under the rule and the evidence the state sought to introduce was "really not 404([B]) evidence." The state indicated that, as set forth in the notice, it intended to introduce testimony from BMV investigator Raymond Palermo that Dickerson had previously pled guilty to obstructing official business in a case in Parma Municipal Court based on "an act stemming from filling out a form with an

address that was not his" on "a separate form" that had "nothing to do with [the] forms" in this case. The state argued that this evidence was admissible under Evid.R. 404(B)(2) because Dickerson's conduct in "placing a false address that he did not live at on his previous form he was convicted of in Parma * * * shows he did not make a mistake when he put a false address [on the form] in this case." The state argued that Dickerson was not prejudiced by the timing of the notice because the state had previously filed the same notice in 664404. After hearing argument from the parties, the trial court overruled Dickerson's objection.

{¶ 16} Palermo and Michael Schwebs, a police sergeant who worked in the Cleveland Police Department's internal affairs division, testified on behalf of the state at trial.

{¶ 17} Palermo testified that a BMV investigation was opened in 2021 after it was discovered that Dickerson had listed an incorrect address on a BMV certificate of registration submitted on August 16, 2021. Palermo stated that he was assigned to the case and that, during his investigation, he learned that the "owner address" Palermo had listed on his August 16, 2021 certificate of registration was the address for the Fifth District. Palermo indicated that he also learned that Dickerson was employed by the Cleveland Police Department, that Dickerson was assigned to the Fifth District and that, on February 3, 2021, Dickerson had submitted an inaccurate and incomplete Form 2610 to the BMV.

{¶ 18} Palermo described the purpose and function of Form 2610. He stated that Form 2610 is "a confidentiality request [s]o those that work in corrections, law

enforcement, [or] the judicial system that would like their work address to be displayed on their driver's license or vehicle registrations have that option afforded to them." He indicated that eligible individuals who wish to protect the confidentiality of their residence address can request that a business address be listed as their address on their driver's license and vehicle registrations. Palermo identified the information required on the form and explained how the form should be completed.

{¶ 19} Palermo stated that eligible individuals who wish to protect the confidentiality of their residence address from the public still have to provide their residence address to the BMV "so other entities can know that they actually have a residential address that can be shielded" and "so they have a good address on file to be contacted" by the BMV, if necessary.

{¶ 20} Palermo testified that the Form 2610 Dickerson submitted on February 3, 2021 was inaccurate and incomplete because the address for the Fifth District was listed as Dickerson's "residence address" (rather than his business address), no address was provided in the spot designated for Dickerson's "business address" and Dickerson did not otherwise disclose his residence address on the form. He also noted that the date Dickerson placed next to his signature at the bottom of the form, February 3, 1995, was incorrect. Palmero stated that Dickerson had correctly identified his name, social security number and driver's license number on the Form 2610. Palermo indicated that "Agency #1856," listed at the

bottom of the form as having verified Dickerson's photo identification, was the BMV office in Brooklyn, Ohio.

{¶ 21} Over defense counsel's objection, Palermo testified that this case was not the first time he had encountered issues with Dickerson's vehicle registrations. He stated that on August 10, 2021, Dickerson had pled guilty to one count of obstruction of official business, amended from a charge of falsification of license, in the Parma Municipal Court (the "Parma case"). Palermo did not describe the charges or allegations in the Parma case in any detail, other than to state that the case involved "the proper address on registration forms" and an offense "similar to this case." Palermo stated that other counts against Dickerson in the Parma case were dismissed. Palermo testified that Dickerson was first charged with "felony level" offenses related to his August 16, 2021 certificate of registration in 664404.

{¶ 22} The state then asked the trial court to take judicial notice of two dates: (1) that Dickerson was arraigned in 664404 on February 11, 2022 and (2) that the first pretrial in 664404 was held on March 9, 2022. After the state showed the trial court copies of the "arraignment room sheet" in 664404 and the journal entry from the March 9, 2022 pretrial conference in 664404, the trial court took judicial notice of these dates as requested. Dickerson did not object. At the parties' request, the trial court later took judicial notice of two additional dates: (1) that Dickerson was indicted in this case on July 8, 2022 and (2) that 664404 was dismissed on August 31, 2022.

{¶ 23} Palermo testified that, after March 9, 2022, he continued to investigate Dickerson's vehicle registration history and discovered that Dickerson had submitted two additional certificates of registration, on March 17, 2022 and April 5, 2022, on which the address of the Fifth District was listed as Dickerson's address.

{¶ 24} Palermo acknowledged that if Dickerson had accurately completed the Form 2610 he submitted, his actions related to the certificates of registration "would not be a crime" because Dickerson would have been authorized to list the Fifth District's address as his address on the registrations, i.e., that a valid Form 2610 would constitute a "defense" to "allegations of illegality and falsification." Palermo indicated that it was Dickerson's unauthorized use of the Fifth District's address on his certificates of registration that gave rise to charges of tampering with records and forgery. Palermo stated that this was the first case he had investigated involving this type of registration issue with a police officer.

{¶ 25} Palmero testified that the BMV had not yet taken any steps to remove the certificates of registration Dickerson had filed from its records. He stated that the BMV could change or inactivate certificates of registration "[o]nly at the request of the customer" or if the BMV received confirmation that someone had been defrauded by the documents. He indicated that if the BMV were to remove a record that the BMV viewed as have been falsely completed by a police officer it could "appear to be malicious" or as if the BMV were trying to "cover up" for the officer.

{¶ 26} Schwebs testified that he became involved in this case as part of an administrative, internal affairs investigation. He identified Dickerson and stated that he was responsible for monitoring Palmero's BMV investigation and determining whether Dickerson violated any department policies or procedures. He indicated that, as of the time of the trial, his administrative investigation was still "open."

{¶ 27} Schwebs, who had previously worked as a road supervisor at the Fifth District, identified the location of the Fifth District, as shown on overhead and street view maps of the area and confirmed that no one lived at that address.

{¶ 28} Schwebs testified that he was familiar with Form 2610, that he had successfully completed the form in the past without difficulty and that, in his experience, police officers often completed the form to protect the confidentiality of their residence addresses. Schwebs stated that when he completed the form, he went to the local BMV office in Strongsville, requested a Form 2610, presented his official police identification and his driver's license, completed the form and then handed it to the clerk, who reviewed the form and his identification. Schwebs indicated that, when completing the form, he listed his work address (a Cleveland Police Department address) on the line designated for "business address" and his home address on the line designated for "residence address."

{¶ 29} Schwebs testified that a "high" percentage of his job as a police officer — "[f]ar more than 50 percent" — involved filling out forms correctly. He stated that accuracy when completing forms is "an important criteria" [sic] of an officer's job

because "[e]verything we sign is supposed to be truthful and accurate under the law." Schwebs stated that, in the two years he had worked in the internal affairs division, this was the first time he had handled a case in which a police department's address had been listed on BMV records without permission.

{¶ 30} The trial court admitted into evidence copies of Dickerson's Form 2610, his three certificates of registration and the maps that showed the location of the Fifth District without objection.

{¶ 31} At the conclusion of the state's case, Dickerson moved for judgment of acquittal pursuant to Crim.R. 29. After hearing from the parties, the trial court denied the motion. Dickerson rested without presenting any witnesses, then renewed his motion for acquittal. Once again, the trial court denied the motion.

{¶ 32} The jury found Dickerson guilty on Counts 3-6 — i.e., tampering with records in violation of R.C. 2913.42(A)(1) and forgery in violation of R.C. 2913.31(A)(3) related to the certificates of registration Dickerson submitted on March 17, 2022 and April 5, 2022. The jury found Dickerson not guilty on Counts 1 and 2 — i.e., tampering with records in violation of R.C. 2913.42(A)(2) and forgery in violation of R.C. 2913.31(A)(3) related to the certificate of registration Dickerson submitted on August 16, 2021.

{¶ 33} The trial court sentenced Dickerson to an aggregate prison term of 12 months, i.e., 12 months each on Counts 3 and 5 and 9 months each on Counts 4 and 6, with all sentences to be served concurrently. The trial court also imposed two years' discretionary postrelease control and ordered Dickerson to pay costs.

{¶ 34} Dickerson appealed, raising the following four assignments of error for review:

> First Assignment of Error: The trial court erred in taking judicial notice of docket sheets from the arraignment room to establish Appellant had been previously arraigned.

> Second Assignment of Error: The trial court denied Appellant due process of law committing reversible error by improperly permitting evidence of other bad acts.

> Third Assignment of Error: Appellant's convictions are not supported by sufficient evidence.

> Fourth Assignment of Error: Appellant's convictions are against the manifest weight of the evidence.

**Law and Analysis**

**Judicial Notice and Other-Acts Evidence**

{¶ 35} In his first assignment of error, Dickerson contends that the trial court erred in taking judicial notice of "docket sheets from the arraignment room" to establish that Dickerson had been previously charged with similar offenses in the Cuyahoga County Common Pleas Court in 664404. Dickerson argues that "[i]t was improper" for the trial court to take judicial notice of "anything regarding the prior docket" because "arraignment room sheets and docket entries are not things that are either commonly known * * * or which can be readily determined by resorting to a source whose accuracy was not in dispute."

{¶ 36} In his second assignment of error, Dickerson contends that the trial court erred in allowing the state to introduce evidence of his prior criminal prosecutions in 666404 and the Parma case because (1) the state failed to give

reasonable notice of its intent to introduce such other-acts evidence as required under Evid.R. 404(B)(2) and (2) the evidence the state introduced regarding the Parma case was "present[ed] * * * as propensity evidence," "leav[ing] the jury with the highly prejudicial notion" that the trial in this case was "somehow an extension of that case."

{¶ 37} We need not address the merits of these assignments of error because even if we were to consider (1) the facts of which the trial court took judicial notice and (2) the other-acts evidence challenged by Dickerson, we would still find that the record lacks sufficient evidence to support Dickerson's convictions.

**Sufficiency of the Evidence**

{¶ 38} In his third assignment of error, Dickerson contends that his convictions are not supported by sufficient evidence because there was "insufficient evidence of the necessary states of mind required for conviction." Specifically, Dickerson argues that there was insufficient evidence to prove beyond a reasonable doubt that Dickerson (1) "knew he was without privilege to register his vehicles to his employer's address" and (2) had "a purpose to defraud or facilitation of fraud" in submitting the vehicle registrations at issue, as required to support his convictions. We agree.

{¶ 39} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. The relevant inquiry in a sufficiency challenge is "'whether, after viewing the evidence in

a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable juror of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 8th Dist. Cuyahoga No. 111922, 2023-Ohio-2296, ¶ 81, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring); *see also State v. Bankston*, 10th Dist. Franklin No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 40} Dickerson was convicted of two counts of forgery in violation of R.C. 2913.31(A)(3) and two counts of tampering with records in violation of R.C. 2913.42(A)(1) based on the certificates of registration he submitted on March 17, 2022 (Counts 3 and 4) and April 5, 2022 (Counts 5 and 6).

{¶ 41} R.C. 2913.31(A)(3) states: "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.42(A)(1) states: "No person, knowing the person has no privilege to do so, and

with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." Typically, a violation of R.C. 2913.42(A)(1) is a first-degree misdemeanor. *See* R.C. 2913.42(B)(2)(a). But the offense is elevated to a third-degree felony if the writing, data, computer software, or record is "kept by or belongs to a local, state, or federal governmental entity." R.C. 2913.42(B)(4). Dickerson was convicted of tampering with records as a third-degree felony.

{¶ 42} "Defraud" means to "knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). "Deception" means "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A). "Utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H). "Privilege" means "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶ 43} A person acts "purposely" "when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature * * * it is the offender's specific intention to engage in

conduct of that nature." R.C. 2901.22(A). A person acts "knowingly," regardless of purpose, "when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 44} Dickerson argues that his convictions should be overturned because (1) "there was no direct evidence concerning [his] state of mind," i.e., Dickerson did not testify and "no witness was called to offer having heard [Dickerson] make such an admission or having witnessed behavior inconsistent with [the] belief that [he] could lawfully register his vehicles to his employer's address," and (2) "the circumstantial evidence offered to prove the point was a mixture of the inadmissible and the irrelevant." He claims that "[t]he jury was invited to find [Dickerson] guilty not on the basis of what was in [his] mind" and his knowledge and understanding of the forms at issue, but "on the basis of what others," i.e., Palermo and Schwebs, "gleaned from the situation." He asserts that if he had understood that his Form 2610 was ineffective, "he would have filed a new Form 2610, not attempted to register another vehicle with the old one."

{¶ 45} The state maintains that because Dickerson did not include his residence address on the Form 2610 he submitted, Dickerson "did not have the privilege" to use his work address on his vehicle registration forms and that, based on his prior indictment for such conduct in 664404 and his prior conviction in the Parma case, the jury could reasonably infer that Dickerson did so with the purpose to defraud or knowing that he was facilitating a fraud.

{¶ 46} The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25. Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. Because direct evidence of a defendant's intent "will seldom be available," such "proof often must be derived from circumstantial evidence," i.e., gathered from all the surrounding facts and circumstances. *State v. Cammon*, 8th Dist. Cuyahoga No. 106056, 2018-Ohio-3183, ¶ 19; *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978) ("'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.'"), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Indeed, a defendant may be convicted based solely on circumstantial evidence. *See, e.g., State v. Sanders*, 8th Dist. Cuyahoga No. 108953, 2020-Ohio-5081, ¶ 55; *State v. Bergsmark*, 6th Dist. Lucas No. L-03-1137, 2004-Ohio-5753, ¶ 9. "[F]iling a form containing false information with the intent to defraud can be a violation of R.C. 2913.42." *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, 983 N.E.2d 316, ¶ 2; *see also State v. Infante,* 11th Dist. Trumbull No. 2019-T-0043, 2020-Ohio-992, ¶ 21.

{¶ 47} Following a thorough review of the record in this case, viewing the evidence in the light most favorable to the state, we conclude that the state failed to

present sufficient direct or circumstantial evidence to prove beyond a reasonable doubt that Dickerson acted with the purpose to defraud or knowing that he was facilitating a fraud. Accordingly, Dickerson's convictions for forgery and tampering with records must be vacated.

{¶ 48} It is important to note that it was not the omissions or inaccuracies on the Form 2610 that gave rise to Dickerson's convictions for forgery and tampering with records; it was his signatures on the vehicle registration forms. Dickerson was convicted of forgery and tampering with records because he signed two certificates of registration that listed his work address (rather than his residence address) as the "owner [addr]ess" after he filed a facially incomplete and inaccurate Form 2610 — which was, nevertheless, accepted by the BMV.

{¶ 49} The parties do not dispute that (1) Dickerson was eligible to have his business address rather than his residence address listed on his driver's license and vehicle registrations and (2) if Dickerson had completely and accurately filled out the Form 2610 he submitted, he could not have been successfully prosecuted for the criminal offenses with which he was charged. Palermo testified that the alleged forgery and tampering with records was "that the address of the Cleveland police department appears on that [vehicle registration]" and that, if Dickerson's Form 2610 had been "filled out correctly," "it would not be a crime" for Dickerson's work address to be listed on his vehicle registrations.

{¶ 50} R.C. 4501.271(E) provides that "[a] certificate of registration issued to a peace officer * * * who files a request under [R.C. 4501.271(A)(1)(b)] *shall* display

the business address of the officer." (Emphasis added.) Form 2610 states, "[t]his form will be effective after receipt and processing" at the BMV in Columbus, Ohio and that, once processed, the applicant's business address will be "[a]utomatically display[ed] on all vehicle[]" registrations containing the applicant's social security number. (Emphasis deleted.) *See also* Ohio Adm.Code 4501:1-12-03(G) ("An opt-out shall take effect only after the BMV 2610 is received by the bureau at its main office and is thereafter processed."); Ohio Adm.Code 4501:1-12-03(J) ("The applicant shall include his or her social security number on the BMV 2610. And the opt-out shall apply to the driver's license and all motor vehicle records containing the applicant's social security number as stated clearly on the form.").

{¶ 51} Although Form 2610 states that "the information will not be updated" "[i]f the form is not filled out completely" and although Dickerson's Form 2610 was deficient on its face — i.e., the lines designated for Dickerson's date of birth and business address were left blank and the date Dickerson placed next to his signature (February 3, 1995) was more than 25 years before the form was submitted — the state presented no evidence that Dickerson's Form 2610 was ever rejected by the BMV or that Dickerson was notified or otherwise made aware of any such rejection. To the contrary, it appears that Dickerson's Form 2610 was accepted, processed and put into effect by the BMV.

{¶ 52} There is a signature under the heading "Verification & Signature for Completion Required" on Dickerson's Form 2610 indicating that his "photo id was verified by" an unidentified individual in "Agency #1856." Consistent with Ohio

Adm.Code 4501:1-12-03(J) and the statement on Form 2610 that the applicant's business address would be "[a]utomatically display[ed] on all vehicles" containing the applicant's social security number once the form was processed, the "owner addr[ess]" fields on the certificates of registration Dickerson signed were prepopulated by the BMV with the address Dickerson had provided on his Form 2610, i.e., his work address, not the residence address that would have been on his driver's license before he submitted his Form 2610.[2] Once the BMV processed Dickerson's Form 2610, Dickerson's privilege to have his business address displayed on certificates of registration would have continued until the expiration of his driver's license. Ohio Adm.Code 4501:1-12-03(G), (M). He was not required to complete a new Form 2610 each time he submitted a vehicle registration. *Id.* No evidence was presented that Dickerson's driver's license expired prior to his execution of the certificates of registration on March 17, 2022, and April 5, 2022.

{¶ 53} Each of the vehicle registration forms Dickerson signed listed an "owner addr[ess]" of 881 East 152d Street, Cleveland, Ohio 44110 — his correct work address — which Dickerson had provided to the BMV when he submitted his Form

---

[2] By all accounts, this was the first Form 2610 Dickerson submitted. Dickerson's driver's license number was identified on the Form 2610 he submitted. Before the form was processed, Dickerson's driver's license would have presumably disclosed his residence address. There was no claim the driver's license number listed on Dickerson's Form 2610 or the residence address listed on Dickerson's driver's license (prior to his submission of the Form 2610) was incorrect. Accordingly, the BMV already had Dickerson's residence address at the time he submitted the Form 2610. No evidence was presented at trial regarding whether the address displayed on Dickerson's driver's license was changed from his residence address to his business address after he submitted his Form 2610.

2610. That "owner addr[ess]" was automatically populated into the certificates of registration by the BMV.[3] Although Dickerson signed each of the prepopulated forms, "affirm[ing] and attest[ing]" that the information the BMV had preprinted on the forms was correct, there is nothing on the certificates of registration designating the "owner addr[ess]" as a "residence" address rather than a "business" or "work" address. The address listed was, in fact, Dickerson's, i.e., the vehicle owner's, address. There is no place on the certificate of registration forms for separately designating a "residence" address, and no evidence was presented that Dickerson had been asked (and failed) to provide his residence address when submitting the certificates of registration.

{¶ 54} There is ample fault to lay on Dickerson for his failure to accurately complete the form required to a request a privilege to which he was entitled, but the evidence presented here does not support the determination that his conduct was criminal and deserving of the one-year term of imprisonment the trial court imposed.

---

[3] It is not clear, based on the limited record before us, precisely how Dickerson's vehicle registrations came to be prepopulated by the BMV with Dickerson's work address as the "owner add[ress]." No evidence was presented that a law enforcement officer could change his residence address by filing a Form 2610. Further, the BMV is not supposed to act on incomplete forms. As stated above, Form 2610 instructs applicants: "Please do not leave *any fields* blank. If the form is not filled out completely, *the information will not be updated*." (Emphasis added.) So, either the BMV changed Dickerson's residence address based on his incomplete Form 2610 using the "residence address" listed on the Form 2610 or the BMV correctly interpreted Dickerson's intent, based on the purpose of the Form 2610 and the boxes he checked on the Form 2610, to use the address listed, i.e., his work address, on his vehicle registrations in lieu of his residence address.

**{¶ 55}** Because the state failed to present sufficient evidence to prove beyond a reasonable doubt that Dickerson signed certificates of registration containing false information with the purpose to defraud or knowing that he was facilitating a fraud, Dickerson's third assignment of error is sustained, and his convictions for forgery and tampering with records are hereby vacated.

**{¶ 56}** Based on our resolution of Dickerson's third assignment of error, his fourth assignment of error is moot.

**{¶ 57}** Judgment reversed; convictions vacated.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
SEAN C. GALLAGHER, J., CONCUR